UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BENCIX COMMERCIAL VEHICLE SYSTEMS, et al., | Case No. 1:09-CV-0177 |
| Plaintiffs, | |
| | JUDGE DONALD C. NUGENT |
| v. | |
| ARVIN MERITOR, INC., et al., | |
| | MEMORANDUM OPINION |
| Defendants. | AND ORDER |

This matter is before the court on Defendant, WABCO Automotive Control Systems, Inc.'s ("WABCO") Motion for Summary Judgment. (ECF #78). WABCO seeks summary judgment declaring Plaintiffs' U.S. Patent No. RE38,874 (the "RE '874 patent") invalid under 35 U.S.C. § 251 for violation of the recapture rule. Plaintiffs Knorr-Bremse Systems fur Nutzfarhzeuge GmbH ("Knorr-Bremse"), Bendix Commercial Vehicle Systems LLC ("BCVS"), and Bendix Spicer Foundation Brake LLC ("Bendix Spicer") filed a cross-motion for partial summary judgment seeking a judgment that the RE '874 does not violate the recapture rule. (ECF # 84). For the following reasons, the Plaintiffs' motion for partial summary judgment is granted and WABCO's motion for summary judgment is denied.

**FACTUAL AND PROCEDURAL HISTORY**[1]

Knorr-Bremse, a manufacturer of braking systems for commercial vehicles, is the owner of the RE '874 patent, which is a reissue of U.S. Patent No. 5,927,445 (the "'445 patent").  BCVS, a subsidiary of Knorr-Bremse, holds an exclusive license under the RE '874 patent.  Bendix Spicer holds a limited sublicense to the RE '874 patent.  Knorr-Bremse, BCVS, and Bendix Spicer allege that WABCO is manufacturing air disc brakes that infringe upon numerous claims of the RE '874 patent.

WABCO is a supplier of safety and control systems for commercial vehicles, including braking systems.  WABCO contends that even if it has infringed the claims of the RE '874 Patent, that reissued patent is invalid because it attempts to recapture subject matter surrendered during prosecution of the original '445 patent.

    A.    <u>The Technology</u>

The RE '874 patent discloses an improved disk brake for road vehicles.  The improved disc brake consists of a caliper which engages about a brake disk of a vehicle wheel.  The caliper can be cast in one piece to keep the braking components free from any sealing issues.  The caliper, however, contains an opening facing the brake disk.  The opening is large enough to insert the brake application unit, as a preassembled unit, into the caliper.  The brake application unit is the device that transfers force to the brake shoes with enough strength to stop the vehicle. When the brake application unit has been inserted into the caliper, the opening in the caliper is closed by a closure plate.

---

[1] The facts and procedural history have been taken from the undisputed statements set forth in the parties' briefs, from evidence not countered by the opposing party, and from official court records. Because the parties have filed cross-motions for summary judgment on this issue, there is no way to resolve contested facts in favor of the "non-moving party."  However, the Court found no material questions of fact, properly supported by the requisite level of evidence, to be in dispute.

B. Prosecution History

On April 27, 1995, Knorr-Bremse filed its original Application No. DE 19515063 ("German application") entitled "Disc Brake for Vehicles, in Particular Road Vehicles" in the German Patent and Trademark Office. On February 1, 1996, as allowed by the Patent Cooperation Treaty ("PCT"), Knorr-Bremse filed an identical international patent application, No. PCT/DE96/00193 (the "'193 application"), using the European Patent Office ("EPO") as the receiving office.

The EPO, acting in its capacity as the PCT International Preliminary Examining Authority ("EPO Examining Authority"), determined in a written opinion that the original patent application claims were not patentable as being obvious over the prior art. In a letter dated June 5, 1997, Knorr-Bremse submitted new claims 1-6 on replacement sheets (also called annexes) in response to the EPO Examining Authority's written opinion. In support of the new claims, Knorr-Bremse made the following statements:

> It is of substantial importance that the brake application unit can be introduced as a pre-assembled unit . . . . The substance of the invention therefore lies in the fact that the brake application unit is joined together with any desired means . . . in such a way that it can be introduced as a whole, and therefore not individual components, through the opening facing the brake disk. Accordingly, the teaching of the present invention is directed toward the "pre-assembled" unit in its entirety and less toward the specific structural means of achieving pre-assembly.

(ECF # 78-44). The annexes last appeared as an attachment to the International Preliminary Examination Report ("IPER") issued by the EPO Examining Authority on August 1, 1997. The IPER stated that the new claims in the annexes were, as a general matter, patentable. In addition, the IPER stated the following:

> 1. The closest prior art is represented by FR-A-2 306 372 which discloses a disc brake with an integral brake caliper whose brake application unit . . . *has to be introduced* into the brake caliper in *individual parts* via an additional side opening. An additional opening of this type should be avoided for stability reasons.

> Therefore, claim 1 *proposes* introducing the brake application unit as a *pre-assembled unit* into the brake caliper opening opposite the brake disc.
>
> 2. Claims 2 to 6 concern advantageous configurations of the disc brake as per claim 1. For reasons of clarity and clear delimitation over the closest prior art, claim 1 should state clearly that the size of the brake caliper opening opposite the brake disc is such that the pre-assembled brake application unit *can be introduced* through this opening.
>
> At present, the characterizing part of claim 1 merely describes the effect to be achieved.

(ECF # 84-22) (emphasis added).

On October 27, 1997, Knorr-Bremse filed a request to commence the United States national stage of the PCT application, which was assigned Application No. 08/945,457 (the "'457 application") by the United States Patent and Trademark Office ("USPTO"). The filing included an English language translation of the German application and an English language translation of the IPER, but not a translation of the annexes containing the new claims. Rather, Knorr-Bremse specifically requested that the PCT International Bureau issue its English translation of the IPER without annexes. Instead, in the transmittal letter to the USPTO, Knorr-Bremse noted: "APPLICANT WISHES THAT THE ANNEXES TO THE INTERNATIONAL PRELIMINARY EXAMINATION REPORT REPLACE THE APPROPRIATE PAGES OF THE CLAIMS AS FILED." Notwithstanding that statement, Knorr-Bremse did not mark the appropriate boxes in the transmittal letter indicating that any amendments to the original claims were to be included in the application to the USPTO. Knorr-Bremse made a preliminary amendment concerning the original claims of the German application, but never addressed the claims contained within the annexes.

On November 24, 1998, the USPTO issued an Office Action rejecting claim 1 of the '457 application under 35 U.S.C. § 112, as being indefinite for failing to particularly point out and

distinctly claim the subject matter which Knorr-Bremse regarded as the invention. Claim 1 read, in pertinent part, as follows:

> b) the application unit can be inserted as a preassembled unit into the caliper through the opening facing the brake disk when the caliper is removed from the brake disk.

The USPTO examiner stated that the phrase "can be inserted" renders the claim indefinite because it is unclear whether the limitations following the phrase are parts of the claimed invention. (ECF # 84-13). After stating that claims 9-11 were allowed, the examiner made the following assertion:

> The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.
>
> Antony discloses a disc brake assembly comprising of most of the features and components claimed by the applicant. The location of an opening for insertion of a preassembled application unit and a need of a plate for closing off this opening is not adopted by Anthony [sic] for his disclosure.

(ECF # 84-13).

On February 24, 1999, Knorr-Bremse filed an amendment to claim 1 in response to the indefiniteness rejection. Amended claim 1 reads, in pertinent part, as follows:

> b) the application unit is insertable as a preassembled unit into the caliper through the opening facing the brake disk when the caliper is removed from the brake disk.

(ECF # 6-1) In the "Remarks" field of the amendment, Knorr-Bremse stated, "Since the amendments herein relate to only formal matters, responsive to objections raised in the Office Action, the application should now be considered in clear condition for allowance." (ECF # 84-14).

On July 27, 1999, the '457 application issued as United States Patent No. 5,927,445 (the "'445 patent") entitled "Disc Brake for Vehicles Having Insertable Actuator." Two years later, on July 27, 2001, Knorr-Bremse sought reissue, arguing that it had a right to broader claims than those

contained in the '445 patent.  Specifically, in a declaration accompanying the reissue application, the inventors stated:

> Both original independent claims one (1) and nine (9) recite several components of the brake application unit such as the "eccentric" and the "pressure piece".  Inclusion of these components are examples of errors which render the original patent wholly or partly inoperative by reason of the patentees claiming less than they had the right to claim in the patent.  The patentees are entitled to broader claims to a caliper and pnuematic brake that are not limited to specific brake application unit structures other than those of a rotary lever.

The reissue application did not include any changes to the eleven claims of the '445 patent, but added new, broader, claims.

During the prosecution of the reissue application, Haldex Brake Corporation ("Haldex"), a competitor of Knorr-Bremse, filed a protest.  In the protest, Haldex argued that many of the reissue claims improperly recaptured subject matter previously surrendered by Knorr-Bremse in the disclosure of the original specification and through statements made during prior litigation with Haldex. The subject matter Haldex alleged Knorr-Bremse was impermissibly attempting to recapture related to whether the caliper must be made in one piece, not to whether the application unit must be inserted as a pre-assembled unit.

A USPTO examiner ruled that Haldex's interpretation of the recapture rule was erroneous because the rule only applies to amendments of claims or arguments made by the applicant to distinguish claims over the prior art of record during prosecution of the original application.  Regarding the '457 application, the examiner stated that "[n]o rejection of the claims over the prior art of record was made in the application and therefore no arguments were made to distinguish the claims from the prior art of record." (ECF # 84-20).  Thus, the examiner found that Knorr-Bremse did not surrender the subject matter at issue in the protest.

Finally, on November, 15 2005, the USPTO issued RE '874 patent. It included a total of 98 claims, including the eleven claims from the '445 patent.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©. The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.

FED. R. CIV. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel,* 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail

as a matter of law." *Id.* at 252. General statements or conclusory allegations do not create specific fact disputes "showing that there is a genuine issue for trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

## ANALYSIS

Determining whether the claims of a reissued patent violate 35 U.S.C. § 251 is a question of law. *See Pannu v. Storz Instruments, Inc.,* 258 F.3d 1366, 1370 (Fed. Cir. 2001); *In re Clement*, 131 F.3d 1464, 1468 (Fed. Cir. 1997). This legal conclusion can involve findings of undisputed fact that are taken directly from the prosecution file histories and the claims and specifications of the '445 patent and '874 reissue. *See Hester Indus., Inc. v. Stein, Inc.,* 142 F.3d 1472, 1484 (Fed. Cir. 1998). Additionally, "[c]laim construction is a purely legal question" and appropriate for summary judgment. *Pannu,* 258 F.3d at 1370 (citing *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc); *Westvaco Corp. v. Int'l Paper Co.,* 991 F.2d 735, 741 (Fed. Cir. 1993)).

  A. <u>The Rule Against Recapture</u>

**"**Under the reissue statute, a patentee may surrender and seek reissue 'enlarging the scope of the [original patent's] claims' if 'through error without any deceptive intent' he claimed 'less than he had a right to claim in the [original] patent' and he applies for reissue within two years from the grant of the original patent." *MBO Laboratories, Inc. v. Becton, Dickinson & Co.,* No. 2008-1288, 2010 WL 1427547, at *5 (Fed. Cir. Apr. 12, 2010) (citing 35 U.S.C. § 251). Section 251 "is remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986). However, "[t]he reissue statute was not enacted as a panacea for all patent prosecution problems, nor as a grant to the patentee of a second opportunity to prosecute *de novo* his original application." *Id*. at 1582.

Under the recapture rule, a patentee is prevented "from regaining through reissue the subject matter that he surrendered in an effort to obtain allowance of the original claims." *Clement*, 131 F.3d at 1468; *see also Mentor Corp. v. Coloplast, Inc.*, 998 F.2d 992, 996 (Fed.Cir. 1993). In determining whether the recapture rule has been violated, a three-step test is applied. *See Pannu*, 258 F.3d at 1371. The first step is to ascertain "whether and in what 'aspect' the reissue claims are broader than the patent claims." *Id.* Second, if the subject matter of the reissue claims are broader, the court determines "whether the broader aspects of the reissued claim related to surrendered subject matter." *Id.* To determine whether an applicant surrendered particular subject matter, this court must ask "whether an objective observer viewing the prosecution history would conclude that the purpose of the patentee's amendment or argument was to overcome prior art and secure the patent." *MBO Laboratories*, 2010 WL 1427547, at *6 (citing *Kim v. ConAgra Foods, Inc.*, 465 F.3d 1312, 1323 (Fed.Cir. 2006). "Although the recapture rule does not apply in the absence of evidence that the applicant's amendment was 'an admission that the scope was not in fact patentable,' the court may draw inferences from changes in claim scope when other reliable evidence of the patentee's intent is not available." *Clement*, 131 F.3d at 1469 (quoting *Ball Corp. v. United States*, 729 F.2d 1429, 1436 (Fed.Cir. 1984)). Finally, "the court must determine whether the reissued claims were materially narrowed in other respects to avoid the recapture rule." *Pannu*, 258 F.3d at 1371.

In this case, the parties agree that several aspects of the reissue claims are broader than the original patent claims. They also agree that the reissued claims were not materially narrowed in other respects to avoid the recapture rule. Therefore, there is no dispute as to the first and third steps of the recapture rule analysis. Accordingly, this court need only address the second step to

- 9 -

determine whether Knorr-Bremse surrendered subject matter and "whether the broader aspects of the reissued claim related to surrendered subject matter." *Pannu*, 258 F.3d at 1371.

WABCO argues that when Knorr-Bremse amended the phrase "can be inserted" to "is insertable" it narrowed the meaning of the phrase to require that an application unit be inserted as a preassembled unit. The Plaintiffs, however, argue that the phrase "is insertable" is synonymous with the phrase "can be inserted," and therefore, the amendment did not narrow the claim.

The term "insertable" is a non-technical term. *See Brown v.3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (recognizing that claim terms may not be technical terms of art, and do not require elaborate interpretation). Under its ordinary meaning, an "application unit [that] is insertable as a preassembled unit"is one that can be inserted as a preassembled unit. However, just because it can be, does not mean it has to be. There is no requirement, created by this language, that an inserted unit *must* actually be preassembled, only that it would still fit into the opening, even if it were. WABCO has offered no evidence suggesting that the plain meaning of the phrase "is insertable as a preassembled unit" includes any requirement that the unit must actually be preassembled.

Notwithstanding the plain meaning of a term, an alternate meaning may be justified if a patentee "has acted as a lexicographer or when the patentee has clearly limited the scope of the invention through a disclaimer in the specification or prosecution history." *Cannon Rubber Ltd. v. The First Years, Inc.*, 163 F.App'x 870, 875 (Fed. Cir. 2005) (citing *Phillips v. AWH Corp.*, 415, F.3d 1303, 1316-17 (Fed. Cir. 2005)). This court concludes that neither situation occurred here.

The patent specification uses the phrase "can be inserted" to describe an application unit that is capable of being inserted into the caliper as a preassembled unit. The use of this language in the application is consistent with the final amended language ("is insertable") and the change from one

to the other does not clearly indicate that the patentee intended to assign a more narrow definition to the phrase "is insertable" than it would otherwise possess. *See*, *e.g.*, *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2002) (stating that a specification will not act to limit claim language unless a patentee has demonstrated by a clear intention to limit the claim scope); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (noting that the written description must clearly redefine a claim term to put a person having ordinary skill in the art on notice that the patentee intended to so redefine that claim term). "Absent an express intent to impart a novel meaning, claim terms take on their ordinary meaning." *Id*. (citing *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249 (Fed. Cir. 1998).

WABCO argues that claim 1 was deliberately amended in an effort to overcome prior art, and therefore, strongly suggests that Knorr-Bremse admits that the scope of the claim before amendment was unpatentable. However, there is a lack of evidence to support the allegation that Knorr-Bremse surrendered claiming an application unit that was not installed as a preassembled unit. *See Mentor*, 998 F.2d at 995; *Seattle Box Co. v. Industrial Crating & Packing, Inc.*, 731 F.2d 818, 826 (Fed. Cir. 1984) (holding that the recapture rule does not apply where there is no evidence that an "amendment was in any sense an admission that the scope of the claim was not in fact patentable").

The prosecution history also fails to show that the patentee intended to renounce coverage in the claims for any application units that might be inserted unassembled, rather than preassembled. *See Omega Eng'g v. Raytek Corp.*, 334 F.3d 1314, 1325-26 (Fed. Cir. 2003). The patent examiner stated that he initially rejected claim 1 as indefinite under § 112 because the phrase "can be inserted" left "it [was] unclear whether the limitations following the phrase are parts of the claimed

invention."   No reference to prior art was made with regard to claim 1.  In connection with claims 9-11 (which were allowed without amendment), the examiner did specifically reference prior art that disclosed a brake assembly unit with similar features and components, but which did not disclose the "location for insertion of a preassembled application unit and a need of a plate for closing off this opening."  (ECF # 84-13).  There was no indication from the patent examiner that would signal to the patentee that the scope of claim 1 needed to be narrowed in order to overcome the prior art, or otherwise, only that the language in claim one needed to be refined to clarify the intent.  This is further evidenced by the fact that the patent examiner approved the claim without comment, following the minor amendment changing "can be inserted" to "is insertable."  When the patentee amended claim 1 by changing the language in response to the indefiniteness rejection, it indicated that it understood the amendment to "relat[e] to only formal matters." Therefore, there was also no indication from Knorr-Bremse that it intended any substantive change, or renunciation of any coverage sought in the original claim.

Armed with the above information, an objective observer would conclude that the purpose of Knorr-Bremse's amendment was not intended to overcome prior art.  *See MBO Laboratories*, 2010 WL 1427547, at *6.  The only rejection of record is the § 112 rejection for indefiniteness, which, despite the reference to prior art,  was not a prior art rejection.  Knorr-Bremse never indicated during the USPTO prosecution that it intended to narrow the scope of its claims when it changed the insertion language.  Even the patent examiner overseeing the dispute between Knorr-Bremse and Haldex during the reissue proceedings noted that  "[n]o rejection of the claims over the prior art of record was made" during the prosecution of the '445 patent.  Thus, this court is "hard-pressed to conclude that there has been a surrender of subject matter when the patentee has merely amended the

claims to replace an original phrase with a different, but not narrower, amended phrase." *Cannon Rubber*, 163 F.App'x at 876.

WABCO attempts to bolster its claim by asking this Court to consider not only the USPTO proceedings, but also to give weight to the IPER issued by the EPO Examining Authority. According to WABCO, the prior art cited in the IPER Office Action signals to the objective observer that the amendment to claim 1 was intended to overcome the prior art. However, the mere mention of prior art in the IPER does not automatically act as a rejection. Moreover, "[t]he objective of the international preliminary examination is to formulate a *preliminary and non-binding opinion* on the questions of whether the claimed inventions appear to be novel, to be non-obvious, and to be industrially applicable." PCT Art. 33 (emphasis added). The IPER does "not contain any statement on the question whether the claimed invention is or seems to be patentable or unpatentable according to any national law." PCT Art. 35. Therefore, the statements in the IPER carry little weight.[2]

Even if the Court were to consider the IPER, however, the report does not contain any statements that would limit Knorr-Bremse's national stage application to claims for an application unit that must be installed as a preassembled unit. The examiner opined in the IPER, "[f]or reasons

---

[2] WABCO's arguments based on the new claims set forth in the annexes attached to the PCT application and the letter written by Knorr-Bremse to the EPO Examining Authority in support of those claims carries even less weight. An English language translation of the annexes was not included as a part of the United States national stage application. As a matter of law, "failure to do so shall be regarded as cancellation of the amendments . . . ." 35 U.S.C. § 371(d). Therefore, the only claims under the scrutiny of the USPTO were the original claims of the German application. The statements made by Knorr-Bremse in support of the new claims in the response to the written opinion by the EPO Examining Authority are irrelevant. *See Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) (cautioning against placement of great weight on international proceedings).

of clarity and clear delimitation over the closest prior art, claim 1 should state clearly that the size of the calliper opening . . . is such that the pre-assembled unit *can be* introduced through this opening." (Emphasis added). The examiner's language explicitly states that an application unit can be introduced as a pre-assembled unit through an opening of sufficient size, not that it "must be" or "is required to be" introduced as a pre-assembled unit. In sum, there is no evidence found in the claims, specification, or prosecution history that suggests that Knorr-Bremse narrowed or amended claim 1 in an effort to overcome the prior art.

        B.        <u>Prosecution History Estoppel</u>

Under the doctrine of prosecution history estoppel, a patentee who, during prosecution, narrowed his claim scope by an amendment related to patentability is presumed to have surrendered the territory between the original claim and the amended claim unless the patentee can rebut the presumption. *See Festo Corp. v. Shoketsu Kinzoku Kgoyo Kabushiki Co.*, 535 U.S. 722 (2002). However, it must be recognized that prosecution history estoppel only acts as a limitation to the Doctrine of Equivalents, not the reissue statute. *See id.*; *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). Although the recapture rule is similar in nature to prosecution history estoppel in that abandoned ground sought to be recaptured by a patentee is barred, neither the Supreme Court of the United States or the Federal Circuit of Appeals has specifically held that the recapture rule applies to the full extent of prosecution history estoppel. Therefore, this court will not extend the recapture rule beyond amendments made in response to prior art rejections. *See Voice Capture, Inc. v. Intel Corp.*, 354 F.Supp. 2d 997, 1006 (S.D. Iowa 2004) (holding that amendments that trigger the recapture rule are limited to those made to distinguish over prior art). Nevertheless, because this court has found that the language change made by Knorr-Bremse did not actually

narrow the scope of the claim in dispute (claim 1), in response to prior art or otherwise, WABCO could not find shelter under an extended recapture rule even if such a rule was adopted by this court.

        C.        Product-by-Process Claim Interpretation

Recently, the Federal Circuit Court of Appeals held that process terms limit product-by-process claims.  *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1291-93 (Fed. Cir. 2009) (reaffirming *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*, 970 F.2d 834 (Fed. Cir. 1992)).  This rule should "be enforced in some exceptional instance when the structure of the claimed product is unknown and the product can be defined only by reference to a process by which it can be made."  *Abbott Labs.*, 566 F.3d at 1295.  The rationale underlying this rule is directed at preventing an inventor from gaining subject matter that he has not "particularly point[ed] out and distinctly claim[ed]" as his invention.  35 U.S.C. § 112 ¶ 6.  Such an instance does not exist in this case.  In a mechanical patent such as this one, the product structure is known and it is definable by its parts, purpose, and final product, not only by reference to the process by which it can be made.

The claim language in this case is distinguishable from the language in *Abbott Labs.*  566 F.3d at 1295.  In *Abbott Labs.*, Abbott argued that the phrase "obtainable by" introduced an optional process.  However, the product in Abbott's claims 2-5 were cefdinir crystals which are identifiable solely as a the result of their respectively claimed processes.  The Federal Circuit found that construing the phrase "obtainable by" as being optional would "widen the scope of the patentee's claims beyond that which is actually invented [and result in] a windfall to the inventor at the expense of future innovation and proper notice to the public of the scope of the claimed invention."  *Id*. At 1296.  Thus, the Federal Circuit construed the phrase "obtainable by" to limit the asserted claims to products made by those process steps.

In the present case, the optional phrase "is insertable" does not result in a windfall to the inventor or patentee. Unlike the cefdinir crystals at issue in *Abbott Labs.*, a specific process is not required to identify the brake application unit. Furthermore, as stated above, the meaning of the phrase "is insertable" is obvious to an objective viewer and can be given a reasonable meaning. *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005) (holding that "definiteness of claim terms depend[] on whether those terms can be given any reasonable meaning"). Therefore, the optional language here would not negate the purpose of the patent as it would have in *Abbott Labs.*

## CONCLUSION

For the reasons set forth above, the Plaintiffs' motion for partial summary judgment (ECF # 84) is GRANTED; and Defendant, WABCO's motion for summary judgment (ECF #78) is DENIED.  IT IS SO ORDERED.

    /s/ Donald C. Nugent
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Date:   September 10, 2010